IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Lakeisha Allen, et al., | : | Case No. 3:09 CV 0366 |
| Plaintiff, | : | |
| v. | : | |
| City of Toledo, et al., | : | **MEMORANDUM DECISION AND ORDER** |
| Defendants. | : | |

The parties have consented to have the undersigned Magistrate enter judgment in this case filed pursuant to 42 U. S. C. § 1983.  Pending are:  (1) Defendants' Motion to Strike, Plaintiffs' Opposition and Plaintiff's Reply and (2) Defendants' Motion for Summary Judgment, Plaintiff's Opposition and Defendants' Reply (Docket Nos. 35, 36, 39 & 26, 27, 34).  For the reasons that follow, the Magistrate grants the Motion to Strike and the Motion for Summary Judgment.

I. THE PARTIES.

Plaintiff Lakeisha Allen (Allen) is an adult United States citizen and resident of Toledo, Lucas County, Ohio.  She is the mother and legal guardian of four minor children named in this lawsuit:  Antoine Coulter (Coulter), Marquese Coulter (M. Coulter), Dalonte Brown (D. Brown) and Charles Brown (C. Brown).  Coulter, M. Coulter, D. Brown and C. Brown are all named Plaintiffs in this litigation (Docket

No. 10, ¶s 11, 12, 13, 14, 15).

The City of Toledo (City) is a municipal corporation located in Lucas County, Ohio (Docket No. 10, ¶ 16).

The Toledo Police Department (TPD) is a police force organized under Ohio laws with a principal office located in Toledo, Ohio.

Defendant Sergeant Green is a TPD employee.

Officers J. Brown, J. Taylor and D. Wilczorek are TPD employees.

## II. JURISDICTION.

This Court has jurisdiction over this action pursuant to 28 U. S. C. §§ 1331 and 1367. Venue is proper in the Northern District of Ohio under 28 U. S. C. § 1391(b).

## III. FACTUAL BACKGROUND.

On Sunday, July 13, 2008, Plaintiff Allen left her home to attend an interview at 3:30 P.M. (Docket No. 27, Exhibit 4, p. 22). When Plaintiff returned to her home, she observed several adults sitting on the porch and a large group of teenagers and men sitting on the porch (Docket No. 27, Exhibit 4, p. 25). Plaintiff Allen's cousin advised her that there had been three fights during her absence; however, the police did not respond (Docket No. 27, Exhibit 4, p. 26).

There was a fourth fight that Plaintiff Allen witnessed. Jordan Colbert was in the street, injured and bleeding (Docket No. 27, Exhibit 4, p. 30). Plaintiffs' neighbor and Jordan Colbert's godmother, Lavena Simpth, called 911 requesting emergency medical attention for Jordan but she did not disclose Jordan's location to the dispatcher (Docket No. 27, Exhibit 4, pp. 54, 55). Plaintiff Allen assisted Ms. Simpth escort Jordan inside the apartment complex as the crowd grew and a fifth fight began in the middle of the street (Docket No. 27, pp. 31, 32). There were seven to eight people already in Ms. Simpth's

apartment and she had no ice with which to treat Jordan's wound. Consequently, Jordan went to Plaintiff Allen's apartment (Docket No. 27, Exhibit 4, p. 33).

While Plaintiff Allen's children tried to keep Jordan awake, Plaintiff Allen was distracted by a loud commotion outside her balcony (Docket No. 27, Exhibit 4, p. 34). Several of Plaintiffs' neighbors were screaming and using profanity. When the police arrived, (Docket No. 27, Exhibit 4, pp. 34, 55). one of the officers ran toward the crowd; however, the officer was unable to detain anyone as the crowd dispersed when he approached. He returned to Plaintiffs' balcony and shot from a pepper spray gun approximately eight hard pellet balls that disbursed over an interior wall of Plaintiffs' apartment (Docket No. 27, Exhibit 4, pp. 40, 41). This officer then entered Plaintiffs' apartment by climbing onto the balcony (Docket No. 27, Exhibit 4, p. 44). Five to ten minutes later, another police officer gained access to the ground level of Plaintiffs' apartment building (Docket No. 27, Exhibit 4, p. 42). Plaintiff Allen was ordered to open her door and permit the officers into her apartment (Docket No. 27, Exhibit 4, p. 124). Plaintiffs and guests were ordered to vacate the bedroom (Docket No. 27, Exhibit 4, pp. 46, 125). When Plaintiff Allen's sons left the room, the officers entered to search for Jordan (Docket No. 27, Exhibit 4, p. 47). Jordan was escorted out into the hallway by the officers.

Plaintiff Allen, her children and babysitter were not permitted to leave the apartment (Docket No. 27, Exhibit 4, pp. 48-49). Plaintiff Allen called the owner of the building, her uncle, and when he arrived she and her children left the apartment. By that time, the police officer with the pellet gun was gone and Jordan was undergoing treatment by emergency medical services (Docket No. 27, Exhibit 4, pp. 49, 50).

Plaintiff Allen's children were examined by the paramedics at the scene who determined that the children had not been injured. Plaintiff Allen, however, took her children to the emergency room for a second opinion (Docket No. 27, Exhibit 4, p. 52).

The treating physician at St. Vincent's Hospital Emergency Room diagnosed Plaintiff Coulter, an asthmatic, with a corneal abrasion (Docket No. 27, Exhibit 4, pp. 76, 112). His eye condition improved to "okay" on August 15, 2008 (Docket No. 27, Exhibit 4, p. 85). However, Plaintiff Allen claimed that Plaintiff Coulter continued to complain about his eyes and his doctors continued to treat the pain in his eyes with lubricants (Docket No. 27, Exhibit 4, p. 87). Shortly after the accident, Plaintiff Coulter had nightmares. Thereafter, he had four dreams about the police "coming in on us" (Docket No. 27, Exhibit 4, pp. 89, 91-92). He also developed a dislike for police officers and he was prone to emotional outbursts (Docket No. 27, Exhibit 4, pp. 89, 93). Plaintiff Coulter was being treated by a therapist at the Zepf Center, a mental health service (Docket No. 27, Exhibit 4, p. 91).

Plaintiff Allen contends that all of her children were traumatized as a result of the events of July 13, 2008 (Docket No. 27, Exhibit 4, p. 103). Plaintiff M. Coulter suffered as a result of this incident; however, Plaintiff Allen did not articulate what physical or mental maladies, if any, M. Coulter suffered as a result of the July 13th incident.

Plaintiff D. Brown had undergone treatment for anxiety prior to the July 13th incident at the Zepf Center (Docket No. 27, Exhibit 4, p. 114). Plaintiff D. Brown was treated for eye irritation as a result of the July 13th incident (Docket No. 27, Exhibit 4, p. 113). Plaintiff D. Brown had been diagnosed with attention-deficit hyperactive disorder/oppositional defiant disorder after the July 13th incident; however, the diagnosis was unrelated to the July 13th incident (Docket No. 27, Exhibit 4, p. 114-115).

Plaintiff C. Brown was diagnosed with eye irritation on July 13, 2008 (Docket No. 27, Exhibit 4, p. 96). He was also undergoing therapy for symptoms of stress at the Zepf Center (Docket No. 27, Exhibit 4, p. 97). Plaintiff C. Brown had undergone therapy to address issues with anger and bipolar mood swings since 2007 (Docket No. 27, Exhibit 4, p. 98). Since the incident of July 13, Plaintiff C. Brown had also

exhibited bouts of fear of police. He would occasionally scream and cry about their presence. He was awaiting acceptance for treatment at the Zepf Center (Docket No. 27, Exhibit 4, p. 102).

Plaintiff Allen did not sustain any physical injuries as a result of this incident. Although she did not seek treatment, Plaintiff Allen claims that she suffered from anxiety (Docket No. 27, Exhibit 4, pp. 58, 61). The anxiety was manifested by the stress and worry that Plaintiff Allen felt about the problems that her children encountered as a result of this incident (Docket No. 27, Exhibit 4, pp. 59, 61-62).

Plaintiff Allen contends that Defendants violated her civil rights because they entered and searched her apartment without permission, they pointed a pepper spray gun at her and her children and they demeaned her (Docket No. 27, Exhibit 4, p. 64). Although Plaintiff Allen did not incur any out-of-pocket expenses, the damages sustained in her apartment as a result of these events included replacing the door, repairing the wall and replacing the window (Docket No. 27, Exhibit 4, pp. 67, 68).

## IV. THE MOTION TO STRIKE.

On May 10, 2010, Plaintiffs filed exhibits contemporaneously with a Motion for Summary Judgment that explore pepper ball weapons, a pepper ball company and deaths caused by pepper balls (Docket No. 27, Exhibits 5, 7 & 8). The articles have been identified as material copied from the internet. However, they are not accompanied by documentation of authentication. Defendants seek an order deeming these exhibits inadmissible hearsay.

The Sixth Circuit has ruled that documents submitted in support of a motion for summary judgment must satisfy the requirements of FED. R. CIV. P. 56(e). *Logan v. Denny's Incorporated*, 259 F. 3d 558, 570 (6th Cir. 2001). This rule mandates that sworn or certified copies of all papers shall be attached to an affidavit made on personal knowledge that the facts are admissible in evidence. *Id.* Documents submitted in support of a motion for summary judgment that do not satisfy these prerequisites must be disregarded.

*Id.*

The Motion to Strike is well taken. The Magistrate will disregard Exhibits 5, 7 and 8 as they are not authenticated.

### V. THE POSITIONS OF THE PARTIES.

Plaintiffs assert that the conduct of Defendants Brown, Taylor and Wilczorek is directly attributable to Defendant TPD pursuant to principles of respondeat superior. In the Motion for Summary Judgment, Defendants argue that Plaintiffs failed to allege or prove a custom or policy of the City that caused them to suffer a constitutional deprivation; therefor, the claims against the City must fail.

Plaintiffs contend that the act of shooting tear gas in their apartment was unnecessary and excessive police force and amounted to an unlawful seizure under the Fourth Amendment and cruel and unusual punishment under the Eighth Amendment. In the Motion for Summary Judgment, Defendants argue that even if the Court assumes *arguendo* that Plaintiffs can establish this colorable constitutional violation, Defendants Brown, Taylor and Wilczorek are entitled to qualified immunity.

Plaintiffs also argue that Defendants Brown, Taylor and Wilczorek assaulted them and intentionally inflicted emotional distress. In the Motion for Summary Judgment, Defendants Brown, Taylor and Wilczorek assert immunity from liability on all of Plaintiffs' state law claims.

### VI. THE MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Averill v. Gleaner Life Insurance Society*, 626 F. Supp.2d 756, 761 (N. D. Ohio 2009 (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986)). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

6

portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* (*citing Celotex*, 106 S. Ct. at 2552-2553). The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id*. (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2511 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. *Id.* It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1355 (1986)). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Id.* (*citing Celotex, supra,* 106 S. Ct. at 2553).

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor. *Id.* (*citing Eastman Kodak Company v. Image Technical Services, Incorporated,* 112 S. Ct. 2072, 2076 (1992)). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Id.* (*citing Celotex, supra,* 106 S. Ct. 2552).

    **1.**    **CLAIMS AGAINST DEFENDANT TPD.**

In the Complaint, Plaintiffs allege that Defendants Brown, Taylor and Wilczorek were at all times authoritative employees of Defendant TPD acting within the scope of their employment. The acts of Defendants Brown, Taylor and Wilczorek therefore are directly chargeable to Defendant TPD pursuant to

*respondeat superior*.

A municipal police department is not *sui juris* and suits against such entities are construed as brought against the municipality itself, because a judgment against a municipal police department imposes liability on the municipality. *Renz v. Willard Police Department*, 2010 WL 3789563, *2 (N. D. Ohio 2010) (*see, e.g., Harris v. Sutton*, 183 Ohio App.3d 616, 918 N.E.2d 181 (2009)). The cause of action against the TPD is submitted by Plaintiffs' claims against Defendant City. Plaintiffs' Sixth Case of Action is dismissed against Defendant TPD and Defendant TPD is dismissed as a party to this case.

    **2.**    **CLAIMS AGAINST THE CITY OF TOLEDO**.

Plaintiffs impute liability to Defendant City on the sole basis that the police department is a department of the municipality. Plaintiffs suggest that based on this relationship, Defendant City is liable for the acts of its employees.

    **a.**    **FEDERAL CLAIMS.**

Municipalities may be held liable under Section 1983 when the injury inflicted is a result of "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 311 (6th Cir. 2005) (*citing Monell v. Department of Social Services,* 98 S.Ct. 2018, 2037 (1978)). A municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. *Id.* (*citing Monell*, 98 S.Ct. at 2036). There must be a direct causal link between the policy and the alleged constitutional violation to the extent that the municipality's deliberate conduct can be deemed the moving force behind the violation. *Id.* (*citing Graham ex rel. Estate of Graham v. County of Washtenaw,* 358 F.3d 377, 383 (6th Cir. 2004) (internal citations omitted)).

Plaintiffs have not made any allegations in the Complaint that support a finding of a constitutional violation arising from an affirmative act by Defendant City or from a policy or custom endorsed by Defendant City. All counts against Defendant City must be dismissed.

**b.     STATE CLAIMS.**

Cities are immune from negligence and intentional torts claims, and cannot be held liable for state-tort claims on a theory of respondeat superior. *Maruschak v. City of Cleveland,* 2010 WL 2232669, *6 (N. D. Ohio 2010). Ohio political subdivisions, defined as a municipal corporation, county or body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state under OHIO REV. CODE § 2744.01(F), are generally immune from claims brought in negligence relating to the performance of a government function. OHIO REV. CODE § 2744.02(A)(1) provides:

> Except as provided in Division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or a proprietary function.

Responsibility can only be imposed upon a political subdivision if the plaintiff can successfully argue that one of the defenses and immunities provided under OHIO REV. CODE § 2744.03 applies. *Id.*

There is no question that the allegations in Plaintiffs' Complaint are based upon the alleged failure of Defendant City to control the acts of its employees. However, Plaintiffs allege no exception to this general immunity or challenge the applicability of the immunity statute to its state law claims against the City. Defendant City is entitled to immunity provided to political subdivisions for Plaintiffs' state law claims arising out the allegations raised in the Complaint. The Sixth Cause of Action is dismissed against Defendant City.

**3.     CLAIMS AGAINST OFFICERS J. BROWN, J. TAYLOR AND D. WILCZOREK.**

In the initial Complaint, Defendant Green was the only officer named as a party defendant. Plaintiffs

abandoned all claims against Defendant Green in the Amended Complaint and in their Opposition to the Summary Judgment. In the Amended Complaint, all allegations of police impropriety are against Officers J. Brown, J. Taylor and D. Wilczorek. Although counsel for Defendants makes general denials of all claims against all Defendants, there is no evidence that Officers J. Brown, J. Taylor and D. Wilczorek have been served under FED. R. CIV. P. 4 with a summons and a copy of the complaint or that they waived service of the summons and complaint. It is well established that a person named as a defendant does not become a party until served with a summons and copy of the complaint. Officers J. Brown, J. Taylor and D. Wilczorek are not parties to this litigation and therefore the Magistrate will not address the merits of the assault and battery and intentional infliction emotional distress claims asserted against them.

## VII. CONCLUSION

For these reasons, the Motion to Strike (Docket No. 35) and the Motion for Summary Judgment (Docket No. 26) are granted.

**IT IS SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   October 29, 2010