## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHEN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Lakeisha Allen, et al., | : | Case No. 3:09 CV 366 |
| Plaintiff, | : | |
| v. | : | |
| City of Toledo, et al., | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

The parties have consented to have the undersigned Magistrate enter judgment in this case filed pursuant to 42 U. S. C. § 1983.  Pending are Plaintiff's Motion for Reconsideration on Summary Judgment and Defendant's Response (Docket Nos. 44 & 49).  For the reasons that follow, the Magistrate grants the Motion for Reconsideration, amends the Memorandum Decision and Order as to the lack of service on Defendant Brown and grants Defendant Brown's Motion for Summary Judgment (Docket No. 26).

### I. THE PARTIES.

Plaintiff Lakeisha Allen (Allen) is an adult United States citizen and resident of Toledo, Lucas County, Ohio. She is the mother and legal guardian of four minor children named as Plaintiffs in this lawsuit:  A. Coulter (Coulter), M. Coulter (M. Coulter), D. Brown (D. Brown) and C. Brown

(C. Brown) (Docket 2 No. 10, ¶s 11, 12, 13, 14, 15).

The City of Toledo (City) is a municipal corporation located in Lucas County, Ohio (Docket No. 10, ¶ 16).

The Toledo Police Department (TPD) is a police force organized under Ohio laws with a principal office located in Toledo, Ohio.

Officers J. Brown, James Taylor and David Wieczorek are TPD employees. Plaintiffs entered a stipulation and order dismissing James Taylor and David Wieczorek as parties to this suit (Docket No. 48).

## II. JURISDICTION.

This Court has jurisdiction over this action pursuant to 28 U. S. C. §§ 1331 and 1367. Venue is proper in the Northern District of Ohio under 28 U. S. C. § 1391(b).

## III. FACTUAL BACKGROUND.

On Sunday, July 13, 2008, Plaintiff Allen returned home after 3:30 P.M. and observed several adults and a large group of teenagers congregated on or near the porch attached to her apartment building (Docket No. 27, Exhibit 4, pp. 22, 25). Plaintiff Allen's cousin advised her that there had been three fights during her absence; however, the police did not respond (Docket No. 27, Exhibit 4, p. 26).

Plaintiff Allen witnessed a fourth fight. In the aftermath, she discovered Jordan Colbert in the street, injured and bleeding (Docket No. 27, Exhibit 4, p. 30). Plaintiffs' neighbor and Jordan Colbert's godmother, Lavena Syph, called 911 and requested emergency medical attention for Jordan but she did not disclose Jordan's location to the dispatcher (Docket No. 27, Exhibit 4, pp. 54, 55). Plaintiff Allen assisted Ms. Syph in escorting Jordan inside the apartment complex as the crowd

grew and a fifth fight began in the middle of the street (Docket No. 27, pp. 31, 32). There were seven to eight people already in Ms. Syph's apartment and she had no ice with which to treat Jordan's wound. Consequently, Jordan went to Plaintiffs' apartment (Docket No. 27, Exhibit 4, p. 33).

While Plaintiff Allen's children tried to keep Jordan awake, Plaintiff Allen was distracted by a loud commotion outside her balcony (Docket No. 27, Exhibit 4, p. 34). Several of Plaintiffs' neighbors were screaming and using profanity. When the police arrived, one of the officers ran toward the crowd; however, the officer was unable to detain anyone as the crowd dispersed when he approached. He returned to Plaintiffs' balcony and shot approximately eight hard pellets of pepper spray that disbursed over an interior wall of Plaintiffs' apartment (Docket No. 27, Exhibit 4, pp. 34, 40, 41 & 55). This officer then entered Plaintiffs' apartment by climbing onto the balcony (Docket No. 27, Exhibit 4, p. 44). Five to ten minutes later, another police officer gained access to the ground level of Plaintiffs' apartment building (Docket No. 27, Exhibit 4, p. 42). Plaintiff Allen was ordered to open her door and permit the officers into her apartment (Docket No. 27, Exhibit 4, p. 124). Plaintiffs and guests were ordered to vacate the bedroom (Docket No. 27, Exhibit 4, pp. 46, 125). When Plaintiff Allen's sons left the room, the officers entered to search for Jordan (Docket No. 27, Exhibit 4, p. 47). Jordan was escorted into the hallway by the officers.

Plaintiff Allen, her children and babysitter were not permitted to leave the apartment (Docket No.27, Exhibit 4, pp. 48-49). Plaintiff Allen called the owner of the building, her uncle, and when he arrived, Plaintiff and her children left the apartment. By that time, the police officer with the pellet gun was gone and Jordan was undergoing treatment by emergency medical services (Docket No. 27, Exhibit 4, pp. 49, 50). Plaintiff Allen's children were examined by the paramedics at the scene who determined that the children had not been injured.

3

Plaintiff Allen contends that all of her children were traumatized as a result of the events of July 13, 2008; consequently, she took them to St. Vincent's Hospital Emergency Room shortly after the incident (Docket No. 27, Exhibit 4, pp. 52, 103). Plaintiff A. Coulter, an asthmatic, was diagnosed with a corneal abrasion (Docket No. 27, Exhibit 4, pp. 76, 112). His eye condition improved to "okay" on August 15, 2008; however, Plaintiff A. Coulter continued to complain about his eyes and his doctors continued to treat the pain in his eyes with lubricants (Docket No. 27, Exhibit 4, pp. 85, 87). Shortly after the accident, Plaintiff A. Coulter had nightmares and dreams about the police "coming in on us" (Docket No. 27, Exhibit 4, pp. 89, 91-92). Plaintiff A. Coulter developed a dislike for police officers and he was prone to emotional outbursts (Docket No. 27, Exhibit 4, pp. 89, 93). Plaintiff Coulter was being treated by a therapist at the Zepf Center, a mental health service developer who specialized in providing behavioral health services and medical care (Docket No. 27, Exhibit 4, p. 91; www.zepfcenter.org.).

Plaintiff M. Coulter was traumatized but Plaintiff Allen did not articulate what physical or mental maladies, if any, he/she suffered as a result of the July 13th incident (Docket No. 27, Exhibit 4, p. 114).

Plaintiff D. Brown underwent treatment for anxiety prior to the July 13th incident at the Zepf Center (Docket No. 27, Exhibit 4, p. 114). Plaintiff D. Brown was treated for eye irritation as a result of the July 13th incident (Docket No. 27, Exhibit 4, p. 113). Plaintiff D. Brown was diagnosed with attention-deficit hyperactive disorder/oppositional defiant disorder after the July 13th incident. Plaintiff Allen admitted that the diagnosis was unrelated to the July 13th incident (Docket No. 27, Exhibit 4, p. 114-115).

Plaintiff C. Brown was diagnosed with eye irritation on July 13, 2008 (Docket No. 27, Exhibit 4, p. 96). He, too, was undergoing therapy for symptoms of stress at the Zepf Center with

a counselor (Docket No. 27, Exhibit 4, p. 97). Plaintiff C. Brown had undergone therapy to address issues with anger and bipolar mood swings since 2007 (Docket No. 27, Exhibit 4, p. 98). Since the incident of July 13th, Plaintiff C. Brown had exhibited bouts of fear of police, occasionally screaming and crying about their presence. He was on a waiting list to see a psychiatrist and physician at the Zepf Center (Docket No. 27, Exhibit 4, p. 102).

Plaintiff Allen did not sustain any physical injuries as a result of this incident. Although she did not seek treatment, Plaintiff Allen claims that she suffered from anxiety (Docket No. 27, Exhibit 4, pp. 58, 61). The anxiety was manifested by the stress and worry about the impairments that her children encountered as a result of this incident (Docket No. 27, Exhibit 4, pp. 59, 61-62).

Plaintiff Allen contends that Defendants violated her civil rights because they entered and searched her apartment without permission, they pointed a pepper spray gun at her and her children and they demeaned her (Docket No. 27, Exhibit 4, p. 64). Although Plaintiff Allen did not incur any out-of-pocket expenses, the damages sustained in her apartment as a result of these events included replacing the door, repairing the wall and replacing the window (Docket No. 27, Exhibit 4, pp. 67, 68).

## IV. PROCEDURAL HISTORY.

Defendants filed a motion to strike and a motion for summary judgment (Docket No. 26 & 35). The motion to strike exhibits 5, 7 and 8 was granted. The motion for summary judgment was granted as to Defendant TPD and Defendant City of Toledo. Claims against Officers J. Brown, James Taylor and David Wieczorek were not addressed based upon a finding that the officers were not served with process. Subsequently, Officer Brown acknowledged that he was served with process through counsel. Counsel stipulated that Officers David Wieczorek and James Taylor be dismissed as parties. Plaintiff filed a Motion for Reconsideration of the Court's ruling that service

was not completed upon Officer Brown.

### V. PLAINTIFFS' MOTION FOR RECONSIDERATION.

Plaintiffs move for reconsideration on the grounds that this Court erred in holding that the officers had not been properly served. Plaintiffs argue that lack of service should be disregarded because Defendant's attorney acknowledged service, Defendant did not plead lack of service, and there has been no rebuttal of the presumption of adequate service.

Defendants acknowledge that service was properly made when Defendants counsel agreed to accept service on behalf of Officer Brown. Officer Brown also acknowledges and confirms that he was served through his attorney (Docket No. 49).

#### A. MOTION FOR RECONSIDERATION STANDARD OF REVIEW.

There is no direct federal rule that describes reconsideration. *Rodriguez v. City of Cleveland*, 2009 WL 1565956, * 1-2 (N. D. Ohio 2009). The Sixth Circuit, however, has held that a motion to vacate and reconsider may be treated under FED. R. CIV. P. 59(e) as a motion to alter or amend a judgment. *Id.* (*see Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979) ("[A] motion which asks a court to vacate and reconsider, or even to reverse its prior holding, may properly be treated under Rule 59(e) as a motion to alter or amend a judgment."). Such a motion is extraordinary and is seldom granted because it contradicts notions of finality and repose. *Id.* (*see Wells Fargo Bank v. Daniels*, No. 1:05-CV-2573, 2007 WL 3104760, at * 1 (N. D. Ohio 2007); *Plaskon Electric Materials, Incorporated v. Allied-Sigal, Incorporated*, 904 F. Supp. 644, 669 (N. D. Ohio 1995)).

A court may grant a motion to amend or alter judgment if a clear error of law or newly discovered evidence exists, an intervening change in controlling law occurs, or to prevent manifest injustice. *Id.* (*See Gencorp, Incorporated v. American International Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). "It is not the function of a motion to reconsider either to renew arguments

6

already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.' " *Id.* (*citing McConocha v. Blue Cross & Blue Shield Mutual of Ohio*, 930 F. Supp. 1182, 1184 (N. D. Ohio 1996) (*quoting In re August 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1408 (S. D. Ind.1994)).

### B. MERITS OF PLAINTIFFS' MOTION FOR RECONSIDERATION.

The Motion for Summary Judgment was granted as to the City of Toledo and TPD in the earlier Memorandum Decision and Order (Docket no. 41). The claims against Officer Brown, however, were not addressed on the merits as there was no evidence that he had been served with process under FED. R. CIV. P. 4. Subsequently, Officer Brown's counsel acknowledged accepting service of process09cv366 (Docket No. 49, Exhibit A). Defendants concur, therefore, that service of process was completed. Consequently, the Magistrate finds that service of process has been completed and Plaintiffs are entitled to have the judgment altered to correct a clear error. For these reasons, the Motion for Reconsideration is granted and review of the merits of the Motion for Summary Judgment as it relates to Officer Brown follows.

### VI. DEFENDANT BROWN'S MOTION FOR SUMMARY JUDGMENT

In the Motion for Summary Judgment, Defendant Brown seeks judgment as a matter of law for the reason that Plaintiffs cannot meet the burden of proof on any of their state law claims. Defendant Brown asserted the defense of qualified immunity in his individual capacity for Plaintiffs' Section 1983 claims.

### A. MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Averill v. Gleaner Life Insurance Society*, 626 F. Supp.2d 756, 761 (N. D. Ohio 2009 (*citing Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986)). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* (*citing Celotex*, 106 S. Ct. at 2552-2553). The burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Id*. (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2511 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. *Id*. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 106 S. Ct. 1348, 1355 (1986)). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of its position. *Id.* (*citing Celotex, supra,* 106 S. Ct. at 2553).

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the non-moving party, all evidence will be construed in the light most favorable to the non-moving party, and all inferences will be drawn in the non-moving party's favor. *Id.* (*citing Eastman Kodak Company v. Image Technical Services, Incorporated,* 112 S. Ct. 2072, 2076 (1992)). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Id.* (*citing Celotex, supra,* 106 S. Ct. 2552).

**B.      TITLE 42 U. S. C. § 1983 STANDARD.**

In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements. First, he or she must demonstrate that he or she was deprived of a right secured by the Constitution or the laws of the United States, and secondly he or she must demonstrate that the deprivation was caused by a person acting under color of state law. *Id.* (*citing Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001)). In their Complaint, Plaintiffs allege that Defendant Brown deprived them of the right to be free from illegal seizure, cruel and unusual punishment, assault and battery, and negligent infliction of emotional distress, a violation of the Fourth and Eighth Amendments to the United States Constitution. There is no dispute that Defendant Brown was acting under color of state law as a Toledo police officer when the pepper spray was discharged. Thus, the inquiry is whether Defendant Brown deprived Plaintiffs of a federally protected right. If the Magistrate finds a violation, then she must address the issue of Defendant Brown's defense of qualified immunity.

### 1. PLAINTIFFS' FOURTH AMENDMENT RIGHT TO BE FREE FROM SEIZURE.

Plaintiffs contend that Defendant Brown seized them by forcing them to stay in a confined space inside the apartment that was filled with pepper spray.

#### a. THE FOURTH AMENDMENT AND ITS APPLICATION TO PLAINTIFFS' CLAIMS.

The Fourth Amendment provides, in pertinent part, for the "right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST. amend. IV (Thomson Reuters 2011). Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred. *United States v. Williams,* 615 F.3d 657, 663 (6th Cir. 2010) (*citing Terry v. Ohio*, 392, 88 S. Ct. 1868, 1879 n. 16 (1968)). "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct

9

would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* (*citing Florida v. Bostick*, 111 S. Ct. 2382, 2388 (1991); *see also Michigan v. Chesternut*, 108 S. Ct. 1975, 1979 (1988) (stating that an individual is seized if "a reasonable person would have believed that he was not free to leave" and noting that the test is an objective one (internal quotation marks omitted)). In addition, an individual must actually submit to the show of authority to be seized within the Fourth Amendment. *Id.* (*citing California v. Hodari D*., 111 S. Ct. 1547, 1550 (1991); *United States v. Jones*, 562 F.3d 768, 774–775 (6th Cir. 2009)).

Words alone, however, may be enough to make a reasonable person feel that he or she would not be free to leave. *Id.* (*citing United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004)). The Sixth Circuit considers the following factors as evidence of a seizure: " 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Id.* (*citing United States v. Campbell*, 486 F.3d at 954 (6th Cir. 2007) (*quoting United States v. Mendenhall*, 100 S. Ct. 1870, 1877 (1980) (opinion of Stewart, J.)).

The very core of Plaintiffs' claim of seizure is that their freedom to leave the apartment was restrained after officers disbursed pepper spray in the apartment. Taking Plaintiff Allen's version of the facts to be correct and drawing all inferences in her favor, the Magistrate is persuaded from Defendant Allen's deposition that officers displaying weapons impeded Plaintiffs' freedom to leave the apartment until they escorted Jordan Colbert from the apartment. However, Plaintiffs failed to present concrete evidentiary material that identified Defendant Brown as the officer restricting their freedom. The police report places Defendant Brown outside the apartment complex shooting pepper

10

spray at the exterior of the building. By Plaintiff Allen's own admission, after he shot the pepper spray, Defendant Brown entered the apartment from the balcony (Docket No. 27, Exhibit 4, p. 44 of 127). Two other officers entered through the door. There were at least two police units on the apartment premises (Docket No. 27, Exhibit 4, pp. 45-46 of 127). Assuming that Defendant Brown was the officer with the pellet gun, Plaintiff Allen recounted that this officer suggested that everyone come out of the bedroom (Docket No. 27, Exhibit 4, pp. 46, 48 of 127). Plaintiffs have failed to go beyond these facts and have failed to present some type of definitive evidentiary material that identifies Defendant Brown as the violator of their clearly established Fourth Amendment right to be free from unreasonable seizures.

**b.     DEFENDANT BROWN'S ENTITLEMENT TO QUALIFIED IMMUNITY**.

Defendant Brown asserts the defense of qualified immunity to Plaintiffs' claims that he violated the right to be free from seizures.

The relevant inquiry in determining whether qualified immunity is available focuses on whether a reasonable official in the defendant's position would have believed his conduct to be lawful in light of clearly established law. *Bell v. City of Cleveland*, 2009 WL 281066, 4 (N. D. Ohio 2009) (*citing Saucier v. Katz*, 121 S. Ct. 2151, 2152 (2001)). According to the Supreme Court, the threshold question in a qualified immunity inquiry is whether the facts alleged show the officer's conduct violated a constitutional right, when viewed in the light most favorable to the party asserting the injury. *Id.* (*citing Saucier*, 121 S. Ct. 2156). If no constitutional right would have been violated, there is no need to further inquire with regard to qualified immunity. *Id*. If, on the other hand, a violation could be established, the next step is to ask whether the right was a clearly established right of which a reasonable person would have known. *Id*.

Whether government officials performing discretionary functions are entitled to qualified

11

immunity involves two questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *McKenna v. Edgell*, 617 F.3d 432, 438 (6th Cir. 2010) *cert. denied*, 131 S. Ct. 1790 (2011) (*citing Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (internal quotation marks omitted)).

In accordance with this framework, Defendants set forth specific facts showing that there is no genuine issue for trial. Defendant Brown acknowledged that on July 13, 2008, he fired pepper spray balls at the exterior wall of Plaintiffs' apartment building for purposes of expelling a boisterous crowd that was gathering on or about the premises. Defendant Brown also acknowledged that when additional units arrived, they went inside the apartment building to find that injured person (Docket No. 27, Exhibit 9, p. 1 of 2). When the burden shifted, Plaintiffs explained that the pepper spray pervaded Plaintiffs' apartment causing inflammatory effects on minor children's eyes. Several officers entered their apartment attempting to find Jordan Colbert. During the course of the intrusion, an officer barred their departure from the apartment until after they found Mr. Colbert and escorted him from the building. Plaintiffs failed, however, to go beyond this fact and present some type of concrete evidentiary material from any of the witnesses that Defendant Brown was the officer who had a threatening presence, displayed a weapon, physically touched Plaintiffs or used language or tone of voice compelling compliance with his command that they could not leave the apartment. As there is no evidence identifying Defendant Brown as the violator of a clearly established right to be free from unreasonable seizure, Defendant Brown is entitled to qualified immunity.

    **2.**    **PLAINTIFFS' FOURTH AMENDMENT RIGHT TO BE FREE FROM EXCESSIVE FORCE**.

Plaintiffs allege that Defendant Brown used excessive force by shooting pepper spray into an apartment filled with young children.

12

     **a.**       THE FOURTH AMENDMENT AND ITS APPLICATION TO PLAINTIFFS' CLAIM.

An analysis of excessive force claims brought under Section 1983 is initiated by identifying the specific constitutional right allegedly infringed by the challenged application of force. *Mallin v. City of Eastlake,* 755 F. Supp.2d 819, 833 (N. D. Ohio 2010) (*citing Graham v Connor*, 109 S. Ct. 1865, 1870 (1989)). If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim is governed by the Fourth Amendment's reasonableness standard. *Aldini v. Johnson* 609 F.3d 858, 865 (6th Cir. 2010) (*citing Phelps v. Coy*, 286 F.3d 295, 299 (2002) (*citing Graham*, *supra*, 109 S. Ct. at 1871)). That standard requires that an officer's use of force be objectively reasonable, balancing the cost to the individual against the government's interests in affecting the seizure, and entails "deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Id.* (*citing Saucier*, 121 S. Ct. at 2157). The officer's subjective intentions are irrelevant to the Fourth Amendment inquiry. *Id*. (*citing Graham*, *supra,* 109 S. Ct. at 1872).

In the instant case, the reasonableness of the officer's decision to dispense pepper spray cannot be determined using perfect 20/20 hindsight but it is assessed as what an officer would have done at the time. Here, the facts that are not held subject to dispute, support a conclusion that a dangerous exigency justified the use of pepper spray to quell the crowd. Plaintiff Allen and witnesses reported that crowds had gathered outside and in certain apartments. On several occasions, the police were called and the crowds disbursed when the police arrived. Jordan Colbert was secreted in an apartment after being injured in a fight and he needed medical assistance. The police report identified the disturbance as gang related and given the intense nature of breaking up a near riot status fight, the pepper spray was used in a good faith effort to restore discipline and

13

order. A reasonable officer in Defendant Brown's position may have deemed it necessary to follow TPD STANDARD OPERATING GUIDELINES, Policy number 3.2.2, which allows chemical projectiles to be used in response to large civil disturbances or in high risk entry situations (Docket No. 27, Exhibit 10, p. 4 of 15). Not only did Defendant Brown follow protocol, he acted reasonably in spraying the chemical into the exterior of the apartment building to disperse the crowd. Shooting the pepper spray did not exceed the force that a reasonable and prudent law enforcement officer would use under the circumstances.

      **b.**     **DEFENDANT BROWN'S RIGHT TO QUALIFIED IMMUNITY**.

Again, Plaintiffs have not refuted Defendant Brown's claim that he was outside of the apartment and that he fired several pepper balls at the walls of the exterior of the building. Because Plaintiffs have not proven that Defendant Brown acted contrary to the excessive force rule, Defendant Brown is entitled to qualified immunity without the need to address whether the constitutional right was clearly established.

      **3.**     **PLAINTIFFS' EIGHTH AMENDMENT CLAIM**.

Plaintiffs assert that their Eighth Amendment right to be free from cruel and unusual punishment was violated when Defendant Brown burst into their home, exposed them to pepper spray and caused continuous harm by prolonged exposure to the pepper spray.

      **a.**     **THE LAW AND ANALYSIS OF THE FACTS.**

The Eighth Amendment to the United States Constitution provides that excessive bail shall not be required, nor excessive fines imposed nor cruel and unusual punishments inflicted. U. S. CONST. AMEND. VIII (Thomson Reuters 2011). It is well established that the state does not acquire

14

the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilty in accordance with due process of law. *Davenport v. Simmons*, 192 F. Supp. 2d 812, 821 (W. D. Tenn. 2001) (*see Bass v. Robinson*, 167 F. 3d 1041, 1049 (6th Cir. 1999) (*quoting Ingraham v. Wright,* 97 S. Ct. 1401, 1412 n. 40 (1977)).

In the instant case, Plaintiffs had not been adjudicated guilty at the time of the alleged cruel and unusual punishment. Accordingly, Plaintiffs' allegations of cruel and unusual punishment fail to state a violation of a federally protected Eight Amendment right.

    **b.**    **DEFENDANT BROWN'S ENTITLEMENT TO QUALIFIED IMMUNITY**.

The Magistrate need not address whether Defendant Brown is entitled to qualified immunity as it is undisputed that Plaintiffs do not have a legally cognizable claim under the Eighth Amendment.

    **4.**    **ASSAULT AND BATTERY**

Plaintiffs contend that shooting pepper spray into the apartment was tantamount to an assault. The dispensing of these chemicals caused physical injury including choking, eye irritation and dyspnea.

    **a**    **THE LAW AND ANALYSIS OF THE FACTS**

Under Ohio law, an assault is "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Kaylor v. Rankin,* 356 F. Supp.2d 839, 853 (N. D. Ohio 2005) (*citing Smith v. John Deere Company*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993)). An assault is the beginning of an act which, if consummated, would constitute battery. *Id.* The act must also be such as to cause reasonable fear of immediate physical violence. *Id.* (*citing Matlock v. Ohio Department of Liquor Control*, 77 Ohio Misc.2d 13, 665 N.E.2d 771 (Ohio Ct. Cl.1996) (*citing Ryan v. Conover*, 59 Ohio App. 361, 18

N.E.2d 277 (1938)).

Construed in the light most favorable to Plaintiffs and all inferences drawn in their favor, Plaintiff Allen and her children were in apprehension of fear when they exited the bedroom and entered the room where a police officer was holding a gun (Docket No. 27, Exhibit 4, p. 47 of 127). Again, Plaintiffs have failed to present concrete evidence that Defendant Brown was the officer who had a threatening presence, made a willful threat or attempted to harm or touch them in an offensive manner. There is no definitive claim for assault by Defendant Brown.

      **b.**      **IS DEFENDANT BROWN ENTITLED TO QUALIFIED IMMUNITY UNDER OHIO LAW?**

Under Ohio law, OHIO REV. CODE § 2744.03(A)(6), immunity applies unless defendants are shown to have acted outside the scope of their employment or official responsibilities or acted with malicious purpose, in bad faith, or in a wanton or reckless manner. "Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. *Van Hull v. Marriott Courtyard*, 87 F. Supp.2d 771, 777 (N. D. Ohio 2000); (*citing Cook v. Cincinnati*, 103 Ohio App.3d at 90, 658 N.E.2d 814); (*citing Jackson v. Butler County Board of Commissioners*, 76 Ohio App.3d 448, 602 N.E.2d 363 (1991)). "Bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. *Id.* Wanton misconduct is the failure to exercise any care whatsoever. *Id.* (*citing Fabrey v. McDonald Police Department,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994) (*citing Hawkins v. Ivy*, 50 Ohio St.2d 114, 116-18, 363 N.E.2d 367 (1977)). "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Id*. (*citing Roszman v. Sammett*, 26 Ohio St.2d 94, 96-97, 269 N.E.2d 420 (1971)). Such perversity must be under such conditions that the actor must be conscious that his

conduct will, in all likelihood, result in an injury. *Id*.

To survive summary judgment, Plaintiff must furnish evidence that Defendant Brown acted outside his job responsibilities or that his acts were fatal in their execution or that the tactical decision was made and/or executed with malicious purpose. Simply, Plaintiffs have failed to present compelling factual evidence that creates a general issue of material fact as to whether Defendant Brown's conduct prior to and during the incident can be reasonably construed as exhibiting bad faith or performing in a wanton or reckless manner so as to bar immunity.

### 5. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs contend that shooting pepper spray into the apartment was extreme and outrageous. Such conduct affected Plaintiffs, causing physical injury as well as shame, fear, embarrassment, anxiety and mental anguish.

Under Ohio law, a plaintiff can recover for negligent infliction of emotional distress if the emotional injuries are both serious and reasonably foreseeable. *Ward v. County of Cuyahoga* 721 F. Supp.2d 677, 694 -695 (N. D. Ohio 2010) (*Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983)). An emotional injury is serious where "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* An emotional injury is reasonably foreseeable where a defendant's act is likely to result in injury to someone. *Id.* (*citing Paugh*, 451 N. E. 2d at 766).

Ohio courts have narrowly limited the scope of negligent infliction of emotional distress claims. *Newman v. Telb*, 2010 WL 3666593, *9 (N. D. Ohio 2010). Specifically, recovery for claims alleging negligent infliction of emotional distress is limited to situations such as where the plaintiff was a bystander to an accident or was in fear of physical consequences to his own person. *Id.* (*citing Gearing v. Nationwide Insurance Company*, 76 Ohio St.3d 34, 40, 665 N.E.2d 1115, 1120

17

(1996); *Kulch v. Structural Fibers, Incorporated*, 78 Ohio St.3d 134, 162-63, 677 N.E.2d 308, 329 (1997) (recovery for negligent infliction of severe emotional distress has typically been limited to instances where the plaintiff has either witnessed or experienced a dangerous accident and/or was subjected to an actual physical peril); *Hartwig v. United States*, 80 F. Supp.2d 765 (N. D. Ohio 1999)).

A plaintiff may only recover for emotional harm negligently inflicted by a defendant by instituting a "traditional" claim for negligent infliction of emotional distress. *Id*. (*citing Tschantz v. Ferguson*, 97 Ohio App.3d 693, 714, 647 N. E. 507, 521 (1994); *Hatlestad v. Consolidated Rail Corporation*, 75 Ohio App.3d 184, 191, 598 N.E.2d 1302, 1306-1307 (1991)).  The plaintiff will then be required to show that he or she (1) was a bystander to an accident, (2) reasonably appreciated the peril thereof, and (3) suffered serious and foreseeable emotional distress as a result of his cognizance or fear of the peril. *Id*. (citation omitted).

Plaintiffs' claim for negligent infliction of emotional distress is not the traditional claim for which recovery is contemplated.  Assuming that Plaintiffs suffered the emotional and physical injuries alleged, Plaintiffs have failed to go beyond the pleadings and present some type of concrete evidentiary material from which the Court can find that they were bystanders to an accident or they were in fear of physical consequences to their own persons.  Having failed to present evidence of the first requirement in the three-pronged test, the Magistrate is persuaded that Plaintiffs have not stated a claim for negligent infliction of emotional distress under Ohio law against Defendant Brown.

## VII. CONCLUSION

For the foregoing reasons, the Motion for Reconsideration is granted as to Defendant Brown.  The Memorandum Decision and Order previously filed is amended as to the lack of service

on Defendant Brown inasmuch as Defendant's counsel acknowledged completion of service upon him.. After addressing the merits of Plaintiffs' claims, the Magistrate grants Defendant Brown's Motion for Summary Judgment (Docket No. 41).

    **IT IS SO ORDERED.**

                                            /s/Vernelis K. Armstrong
                                            United States Magistrate Judge

Date: September 1, 2011